| | | |
|---|---|---|
| **RICHARD D. ANDERSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **UNITED STATES LIFE INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on defendant's Motion to Dismiss Second Amended

Complaint and Motion to Strike Plaintiff's Evidence Submitted in Opposition to Motion to

Dismiss. Having considered defendant's motion, reviewed the pleadings, and conducted a

hearing, the court enters the following findings, conclusions, and Order.

## FINDINGS and CONCLUSIONS

### I.     Background

The court has considered the factual allegations of the Second Amended Complaint in a

light most favorable to plaintiff. In 1989, plaintiff was engaged in the active practice of

medicine. That year he acquired a half-million dollar policy of term life insurance, which was

then being offered to physicians by defendant American Medical Association Insurance Agency,

Inc. (hereinafter "AMAIA"). In relevant part, the policy contained a rider that provided for

waiver of payment of the annual premium in the event the physician became disabled. In 1994,

Dr. Anderson became disabled and applied for the premium waiver, which was granted. From

1994 to 2010, plaintiff remained covered under the term life policy and in fact remains covered

through the filing of this litigation.

In 2010, Dr. Anderson was notified by insurer defendant United States Life Insurance Company (hereinafter "US Life") that, under the terms of his policy, he was obligated to pay the annual premiums upon reaching the age of 76. Plaintiff was advised that if desired to continue coverage under the policy, he would be required to pay a premium of $32,000.00 per year. He further alleges that he has paid the premium for the past two years, but contends that such requirement is contrary to the original policy that he received in 1989, although he apparently does not have a copy of that policy in hand. He further contends that when he negotiated the policy in 1989, he expressly asked for a lifetime waiver of premium in the event he became disabled and that a representative of US Life and/or AMAIA later orally promised him that he would receive a lifetime waiver.

Plaintiff's Second Amended Complaint consists of claims for: (1) Fraud; (2) Negligent Misrepresentation; (3) Negligence by Insurance Broker; (4) Unfair and Deceptive Trade Practices; (5) Breach of Contract; (6) Duress and Conversion; and (7)Unfair Insurance Practices. Defendants have moved to dismiss the Second Amended Complaint in its entirety based on the bar of the statute of limitations as well as failure to state a cognizable claim.

In moving to dismiss, defendants have, in relevant part, produced a copy of what they contend are the governing insurance policies and certificates. See Provident Life and Accident Insurance Company Certificate No. 30114702 (#23-1); U.S. Life Insurance Company Policy No. G-230,808 ( #24-3); and U.S. Life Insurance Company certificate No. 30114702 (#23-4). When taken together, these policies reflect a requirement that to remain covered, premiums would resume upon the insured reaching age 76. The US Life policy further contains a no-oral modification clause. (During the life of the policy, AMAIA switched from Provident Life Insurance Company (hereinafter "provident") to US Life as its group carrier for such policy.)

US Life represents that its policy (bearing the same number as the Provident policy) contains the exact same coverage, premium waiver, and resumption of premium upon reaching age 76 that the Provident policy contained.  US Life represents that the only material difference is what amounts to a no-oral modification provision.

Plaintiff contends that not only are such policies inapplicable, they include forged documents as indicated by the signature of an executive officer who did not hold the position represented on the date therein alleged.  Plaintiff has submitted his own affidavit to which he has attached as exhibits, which appear to be fragments of documents.  Defendants have moved to strike those documents.

## II.     Applicable Standard

Prior to recent developments in the law, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that the plaintiff could prove "no set of facts" which would support its claim and entitle it to relief.  <u>Neitzke v. Williams</u>, 490 U.S. 319 (1989); <u>Conley v. Gibson</u>, 355 U.S. 41 (1957).  This "no set of facts" standard was abrogated by the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), where the Court held that  the "no set of facts" standard first espoused in <u>Conley</u>, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival."   <u>Id.</u> at 563.  The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." <u>Id.</u> at  561 (alteration in original).

Post <u>Twombly</u>, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in

his complaint that "raise a right to relief above the speculative level." Id. at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id. at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is "plausible on its face." Id. at 570 (emphasis added).

Two years after Twombly, the Court again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant unlawfully harmed me accusation." Id. at 678. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citing Twombly, supra). The Court explained what is a plausible claim:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability ...." Id. While the court accepts plausible factual allegations made in a complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the

factual allegations contained in the complaint." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Id.</u> at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." <u>Iqbal</u>, 129 S. Ct. at 1950. While a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, <u>see</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.

## III.  Discussion

In moving to dismiss, defendant contends that a number of plaintiff's common-law claims are barred by North Carolina's three year statute of limitations (N.C.Gen.Stat. § 1-52), as such claims arose when the Provident group policy issued in 1989. Defendants contend that such claims are barred inasmuch as they are based on events that occurred in 1989 when plaintiff supposedly requested a policy that would provide him free insurance for life if he became disabled. See SAC ¶¶ 9, 23. It is undisputed that plaintiff received the Provident Certificate and waiver of premium rider in August 1989. Defendants further contend that plaintiff's Unfair and Deceptive Trade Practices Act (hereinafter "UDTPA") and unfair insurance practices claims are barred by North Carolina's four year statute of limitations period. N.C.Gen.Stat. § 75-16.2. Defendants also contend that plaintiff has failed to state a claim for breach of contract or for duress/conversion.

As to the breach of contract claim, such claim appears to be based not on the policy, but on an alleged oral agreement plaintiff says was reached when US Life/AMAIA allegedly

promised him that he would owe no premiums for the rest of his life as long as he was disabled. In moving to dismiss the breach of contract claim, defendants contend that plaintiff has failed to allege a valid and enforceable contract as the terms of such agreement and that it is barred under the no oral modification provision of the US Life policy. Further, defendants contend that plaintiff has, at most, alleged a gratuitous and thus unenforceable promise.

As to plaintiff's claims against AMAIA, defendants contend that plaintiff has failed to allege a viable claim against AMAIA as it owed no fiduciary duty to plaintiff to secure a policy that would provide a lifetime waiver of premiums if he became disabled.

North Carolina law is well settled that any "action in tort, founded upon a breach of contract, cannot be maintained by one who is not a party or privy to the contract." Jones v. Otis Elevator Co., 231 N.C. 285, 289 (1949); Greene v. Charlotte Chem. Labs., Inc., 254 N.C. 680, 689 (1961) ("An omission to perform a contractual obligation is never a tort unless such omission is also the omission of a legal duty."). Plaintiff has not alleged that he was a party to any contract between AMAIA and Provident and neither AMAIA nor Provident had a duty to explain all terms of the policy. Rayfield Properties, LLC v. Bus. Insurers of Carolinas, Inc., 2012 WL 6595558, at *3 (N.C. Ct. App. Dec. 18, 2012) ("It is clearly not the duty of an insurer or its agent to inquire and inform an insured as to all parts of his policy.").

It is undisputed that under North Carolina law that a UDTPA claim accrues when the unfair or deceptive act is discovered or should have been discovered in the exercise of reasonable diligence. Wysong & Miles Co. v. Employers of Wausau, 4 F. Supp. 2d 421, 433 (M.D.N.C. 1998). It is equally beyond argument that such accrual date is not later than date on which the plaintiff received the policy as the language of the policy, if it is believed to be an accurate copy,

is unequivocal that waiver of premiums would not be allowed past age 76. At the latest, such accrual date would have been in 1994 when plaintiff actually applied for the waiver of premium under the same rider at issue herein.

***

All of plaintiff's claims appear to pivot on his belief that the 1989 Provident policy contained a promise that if he became disabled, he would continue to eligible for a waiver of payment of his premium for life. If it did not, he appears to contend it was AMAIA's fault as it failed to procure such a policy for him. He further appears to contend that he was not aware that he would be responsible for the premiums at age 76 until 2010. While defendants have moved to strike such document, plaintiffs' Exhibit I is a 2008 letter from AMAI to Dr. Anderson, which provides in relevant part as follows:

> [k]eep in mind that the Waiver of Premium benefit ends when you reach age 76. At that time, you may continue to maintain your current life insurance benefit by paying the premiums that become due.

Plaintiffs' Ex. I (# 29-9).

The court has absolutely no problem with the legal theories argued by defendants in support of their Motion to Dismiss. Defendants have accurately reported to the court the applicable periods of limitations and the dates on which those periods began to run. Defendants have also properly argued that when an insured has a reasonable opportunity to read the policy and its terms are clear and unambiguous, the insured is prohibited from asserting his or her belief that the policy contained provisions that it does not. Willis v. Allstate Ins. Co., 172 N.C. App. 175, 616 S.E.2d 29 (2005). Further, an insured who possessed a copy of his insurance policy for eight months prior to becoming disabled could not claim damages for fraud or deceit on the basis that the representations of the soliciting agent were inconsistent with the coverage under his

policy. <u>Setzer v. Old Republic Life Ins. Co.</u>, 257 N.C. 396, 402, 126 S.E.2d 135, 140 (1962). The court has also accepted defendant's argument that to the extent there was a fiduciary relationship between Dr. Anderson and AMAIA, such a relationship does not absolve Dr. Anderson from reading his policy and exercising due diligence within a reasonable time frame. <u>Shepherd v. Shepherd</u>, 57 N.C. App. 680, 682 (1982). Ordinarily, such arguments would carry the day and the action would be dismissed.

What is troubling to this court is plaintiff's allegation that defendants have committed a fraud upon him (and the court) by submitting forged documents. Not only has such an unusual allegation been made, counsel has signed off on the Second Amended Complaint and at hearing essentially stood behind that contention arguing that discovery would back up the plaintiff's allegations. While it is almost incomprehensible to conceive of any motivation for a nationally known insurance company to conspire to deprive a disabled physician of benefits, it is also hard for the court to fathom why counsel for plaintiff would put at stake his equally valuable reputation unless he sincerely believes that which he has represented to the court both in writing and at oral arguments. While it is proper for this court to consider documents referenced in the Second Amended Complaint in deciding the Motion to Dismiss, regardless of whether they are attached to the Second Amended Complaint or provided by the defendants, plaintiff has called into question the authenticity of the documents submitted by defendants.

Based on this court's understanding of group term life insurance policies, there is a master policy for the group (such as physicians, teachers, attorneys, etc.), which does not typically vary between individuals. Where a group member desires to participate, that member applies for and purchases the policy (probably from an array of products) and receives a copy of that policy as well as a certificate of insurance.

8

With that basic understanding, the court believes that it would require little time and resources for the parties to conduct *limited* discovery concerning the policies and certificates issued to Dr. Anderson and his claims of forgery and fraud. While Dr. Anderson may well have lost or misplaced the policy that was sent to him in August 1989, it is probable that the same policy was issued to hundreds if not thousands of physicians in 1989 and that exemplars can be obtained from other participants. Further, the controversy that has erupted over the authenticity of certain signatures can also be inquired into.

In allowing limited discovery, the court has looked to the practice of allowing limited jurisdictional discovery in response to disputed Rule 12(b)(1) and (2) motions. The court will, therefore, deny the Motion to Dismiss without prejudice and require defendants to file their Answer to the Complaint (reserving therein their statute of limitations defenses, among others).

Limited discovery will be allowed on the authenticity of the policies of insurance as well as reciprocal discovery on plaintiff's claims that defendant have tendered forged documents to this court. Reponses to interrogatories, document requests, and requests for admissions shall be made within 14 days. Plaintiff may notice the Rule 30(b)(6) deposition of a representative of US Life and AMAIA and defendants may notice the deposition of plaintiff. If they have not already been procured, affidavits from any agent who allegedly made an oral promise or declined approval of an oral promise should also be obtained.

Sixty days from entry of this Order, defendants may move for Judgment on the Pleadings and submit any evidence they have which supports their contentions. The court expects counsel to meet and discuss what evidence such process has uncovered and whether the Second Amended Complaint remains viable. Indeed, this action may be resolvable without further

discovery through negotiations of counsel concerning what is really driving this litigation, which appears to be the amount of the premium.

If this action survives the Motion for Judgment on the Pleadings, a second round of discovery will be allowed.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Dismiss Second Amended Complaint and Motion to Strike Plaintiff's Evidence Submitted in Opposition to Motion to Dismiss are **DENIED** without prejudice, and defendants shall file their Answer to the Second Amended Complaint within 14 days.

**IT IS FURTHER ORDERED** that a 60-day period of Limited Discovery shall commence following the filing of the Answer as herein provided. The parties shall have 14 days within which to answer or otherwise respond to discovery requests. Defendants may file their Motion for Judgment on the Pleadings 60 days after answer. In the event that no motion is filed, the parties shall file the Certificate of Initial Attorneys Conference as provided in the Local Civil Rules and proceed accordingly with merits discovery after a Pretrial Order is entered.

Signed: 1/29/2014

Max O. Cogburn Jr.
United States District Judge