UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cv-00489-MOC

| | | |
|---|---|---|
| **RICHARD D. ANDERSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **UNITED STATES LIFE INSURANCE** | ) | |
| **COMPANY; AMERICAN GENERAL LIFE** | ) | |
| **INSURANCE COMPANIES; AMERICAN** | ) | |
| **MEDICAL ASSOCIATION INSURANCE** | ) | |
| **AGENCY, INC.; AND WELLS FARGO BANK,** | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on defendants' Motion for Judgment on the

Pleadings. In this action, plaintiff contends that he is entitled to a waiver of the premiums on his

policy of life insurance based on a certificate he contends he received from Provident, which

guaranteed him free life insurance coverage for the remainder of his life so long as he remained

disabled. For the reasons that follow, the court will grant the Motion for Judgment on the

pleadings as plaintiff has been unable to produce such policy.[1]

## I.

In considering the Motion for Judgment on the Pleadings, the court has considered the

factual allegations of the Second Amended Complaint in a light most favorable to plaintiff and

allowed him additional time to consult with counsel and produce, if he can, the certificate

---

[1]      Consideration of defendants' Motion for Summary Judgment has been somewhat protracted based on plaintiff's intermediate pro se status, which occurred after the Second Amended Complaint was filed by counsel and before substitute counsel appeared. Fortunately, Attorney John R. Anderson, plaintiff's son and a member of the Bar of this court, entered his appearance on plaintiff's behalf. The court commends and appreciates the professionalism and perserverance of Mr. Anderson in his representation of Dr. Anderson in this matter.

containing the waiver he purports was issued to him. Plaintiff's Second Amended Complaint consists of claims for: (1) Fraud; (2) Negligent Misrepresentation; (3) Negligence by Insurance Broker; (4) Unfair and Deceptive Trade Practices; (5) Breach of Contract; (6) Duress and Conversion; and (7) Unfair Insurance Practices.

That facts underlying all of plaintiff's claims are straightforward. In 1989, plaintiff was engaged in the active practice of medicine. That year he acquired a half-million dollar policy of term life insurance, which was then being offered to physicians by defendant American Medical Association Insurance Agency, Inc. (hereinafter "AMAIA"). In relevant part, the policy contained a rider that provided for waiver of payment of the annual premium up to a certain age in the event the physician became disabled. In 1994, Dr. Anderson, unfortunately, became disabled and applied for the premium waiver, which was granted. From 1994 to 2010, plaintiff remained covered under the term life policy and was not obligated to pay any premium.

In 2010, Dr. Anderson was notified by defendant United States Life Insurance Company (hereinafter "US Life") that, under the terms of his policy, he was obligated to pay the annual premiums upon reaching the age of 76. Plaintiff was advised that if desired to continue coverage under the policy, he would be required to pay a premium of $32,000.00 per year. In 2013, plaintiff filed this lawsuit assisted by an attorney who subsequently withdrew.

Plaintiff contends that that he has paid the premium for the past two years, but contends that such requirement is contrary to the original policy that he received in 1989. Plaintiff has not been able to produce a copy of such policy and the provision is not found anywhere in the facsimile produced by defendants. He further contends that when he negotiated the policy in 1989, he expressly asked for a lifetime waiver of premium in the event he became disabled and

that a representative of US Life and/or AMAIA later orally promised him that he would receive a lifetime waiver. Again, there is no written evidence of any such promise.

II.

Defendants have moved for judgment on the pleadings as to the Second Amended Complaint. In so moving, they have included a copy of what they contend are the governing insurance policies and certificates. See Provident Life and Accident Insurance Company Certificate No. 30114702 (#23-1); U.S. Life Insurance Company Policy No. G-230,808 ( #24-3); and U.S. Life Insurance Company certificate No. 30114702 (#23-4). When taken together, these policies reflect a requirement that to remain covered, premiums would resume upon the insured reaching age 76. The US Life policy further contains a no-oral modification clause. (During the life of the policy, AMAIA switched from Provident Life Insurance Company (hereinafter "provident") to US Life as its group carrier for such policy.) US Life represents that its policy (bearing the same number as the Provident policy) contains the exact same coverage, premium waiver, and resumption of premium upon reaching age 76 that the Provident policy contained. US Life represents that the only material difference is what amounts to a no-oral modification provision.

Plaintiff initially disputed the authenticity of those documents, submitting to the court documents that he created, which were not regular in form and would not be admissible as they could not be authenticated. Indeed, such documents appeared to be "cut and paste" approximation of what plaintiff recalled the policy to be. In an abundance of caution, this court denied defendants' Motion to Dismiss the Second Amended Complaint without prejudice, opened up initial discovery for 60 days, and allowed defendants 60 days after it answered the

Second Amended Complaint to file its Motion for Judgment on the Pleadings. After discovery closed and defendants filed their motion, Mr. Anderson made an appearance on behalf of Dr. Anderson and the court allowed counsel for plaintiff additional time to respond.

The issues having been fully briefed by counsel, the court will now consider defendants' motion.

## III.

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In resolving a motion for judgment on the pleadings, the court must accept all of the nonmovant's factual averments as true and draw all reasonable inferences in its favor. Bradley v. Ramsey, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004); Atwater v. Nortel Networks, Inc., 394 F. Supp. 2d 730, 731 (M.D.N.C. 2005). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Bradley, 329 F. Supp. 2d at 622.

The standard is similar to that used in ruling on Rule 12(b)(6) motion "with the key difference being that on a 12(c) motion, the court is to consider the answer as well as the complaint." Continental Cleaning Serv. v. United Parcel Serv., Inc., 1999 WL 1939249, at *1 (M.D.N.C. April 13, 1999) (internal citations omitted).

In resolving a motion for judgment on the pleadings, the court may rely on admitted facts in the pleadings, documents attached to the pleadings, and facts contained in materials of which the court may take judicial notice. Bradley, 329 F. Supp. 2d, at 622 (noting that the Court should

consider documents attached to the pleadings); Hebert Abstract Co. v. Touchstone Prop., Ltd., 914 F.2d 74, 76 (5th Cir. 1990) (holding that court should consider pleadings and judicially noticed facts). Where an insurance policy is "integral to and explicitly relied upon in the complaint," the policy itself should be considered along with the factual allegations of the complaint and answer. Colin v. Marconi Commerce Sys. Employees' Retirement Plan, 335 F. Supp. 2d 590, 596 (M.D.N.C. 2004).

Here, the court has gone to some lengths to allow plaintiff an opportunity to both discover and produce a certificate or policy of life insurance that is supportive of his claims. The only policies properly before the court are those produced by defendants, which the court finds to be documents that were kept in the regular course of their or their predecessor's business and which in all respects appear to be authentic.

IV.

On August 21, 1989, plaintiff received certificate number 30114702, which provided $500,000 in term life insurance coverage (the "Provident Certificate"). Defendants have provided a copy of the Provident Certificate, which the court has closely reviewed and finds in all respects to have been properly authenticated. See Declaration of Jessica L. Wilson (#58). The policy contained a paid-up life insurance clause, which provided that if a plan member reached the age of 70 or older, the member would be eligible to receive paid-up life insurance coverage for the rest of his or her life. Provident Certificate at A-8.4. In Dr. Anderson's case, at the time he reached age 70, he qualified for $20,000 in paid-up life insurance coverage, the largest amount available under the paid-up life insurance rider. Id. at A-2. The Provident Certificate also contained a waiver of premium clause, which provided that, if the member

became totally disabled before the age of 60, the member's life insurance coverage would continue with premiums waived for the duration of the disability. <u>Id.</u> A-5–A-6. Although the waiver of premium clause did not contain an age restriction for the cessation of the waiver, the Provident Certificate stated that all benefits under the certificate would terminate on the premium due date next following the date the insured member ceases to be an "eligible member" under the terms of the certificate. <u>Id.</u> at A-9. In turn, the certificate defined "eligible members" as persons insured by age 60 through their 76th birthday. <u>Id.</u> at A-7. Thus, the four corners of the insurance certificate originally issued to plaintiff provided that his coverage would terminate upon the next premium due date following his 76th birthday.

Four years after plaintiff was issued this certificate, provident revised the group plan and issued a new certificate to plaintiff. A properly authenticated copy of that certificate has also been submitted to the court by defendants. Defendants' Memorandum in Support, Ex. B. This new certificate increased the face value to $548,456 and the benefits reduction clause was eliminated. Further, the age ceiling for membership under the plan was increased from 76 to 96. While there were other changes to the group plan which are not relevant here, the 1993 certificate amended the waiver of premium rider to specify that the benefits provided under the rider terminated on the date the insured attained age 76. Def. Exhibit B at B-11. Specifically, the 1993 Certificate provided as follows: "If you become Totally Disabled prior to age 60, your insurance under the Plan will continue while you are so disabled, but not beyond attainment of age 76." <u>Id.</u> A third revised Provident certificate was issued in 1995 and a duplicate of that certificate was also sent to plaintiff as provided in defendants' Exhibits C and D, which have also been properly authenticated through the Wilson Declaration and, in later part, by the

Declaration of Judy Cohen (#57).  What the court discerns from all the Provident certificates is that once plaintiff qualified for the premium waiver due to disability, he was to enjoy the waiver up to his 76th birthday, but after that, if he desired coverage to remain in effect, he would again be obligated to pay the annual premium.  It is undisputed that plaintiff became disabled in 1994, applied for the waiver under the 1993 Provident certificate, and was granted the waiver.

While on the premium waiver, the Provident group policy for physicians was replaced with a new group policy issued by US Life.  Defendants have attached such properly authenticated US Life policy to their Memorandum as Exhibit E.  In any event, plaintiff remained covered by the Provident certificate until his 76th birthday because insureds on waivers could not be terminated from Provident coverage until their waiver expired.  See Def. Ex A. at A-6.  On July 24, 2011, plaintiff reached the age of 76 and the provident Premium waiver ended.  Thereafter, plaintiff received a letter from provident confirming the termination and advising him to contact AMAI if he wished to continue coverage under the physician group life plan, which was now with US Life.  After considering the various options, see Second Amended Complaint ¶¶ 20-24, plaintiff elected to continue the term coverage under the same terms as his previous Provident Certificate and to personally fund the roughly $32,000 in annual premiums.

In his Second Amended Complaint ("SAC"), plaintiff contends that his payment obligations under the course he chose are contrary to the US Life Certificate terms based on his own recollection of conversations that took place between an AMAI representative and a Wells Fargo Bank trust officer. SAC at ¶¶ 19 & 31(b).  Plaintiff alleges in relevant part, as follows:

> 19. Tom Mach, acting within the course and scope of his agency and employment of defendants AMA Insurance Agency, Inc., and The United States Life Insurance Company in the City of New York, assured Ann Horne, trust officer of defendant Wells Fargo Bank, with the expectation that she would repeat

this information to plaintiff Richard D. Anderson (which she in fact did repeat to him), on September 24, 2010, by means of a telephone call from Chicago, Illinois, to Winston-Salem, North Carolina, that as long as plaintiff Richard D. Anderson remained disabled, he would owe no premiums on the policy of insurance for the rest of his life.

SAC at ¶ 19 (<u>see</u> ¶ 31(b) for an almost identical allegation).  Based on such allegation, plaintiff contends that this court should reform the terms of his agreement with US Life to provide him with free life insurance in the amount of $548,456 for the remainder of his life.  Plaintiff has come forward with absolutely no plausible support for this allegation which appears to be based entirely on hearsay.

VI.

Five of plaintiff's seven claims are time barred by North Carolina's three and four year statutes of limitation.

First, plaintiff's actions for fraud, negligent misrepresentation, and negligence are barred by a three-year statute of limitations. N.C. Gen. Stat. § 1-52.  Those claims arose in 1989 when plaintiff purportedly received a certificate of insurance, which he contends did not contain free premiums for life if he became disabled.  At the latest, the statute of limitations began to run when in 1994 plaintiff applied for the benefits of the disability waiver.  As has been made clear through the exhibits, none of the certificates plaintiff received contained a lifetime waiver of premiums.  Thus, the period of limitations had well run years before this action was filed in 2013. The court will, therefore, dismiss these claims as time barred under N.C. Gen. Stat. § 1-52.

Second, plaintiff's claim for unfair and deceptive trade practices is also time barred.  It is undisputed that under North Carolina law, a UDTPA claim accrues and the four year limitations period begins to run when the unfair or deceptive act is discovered or should have been

discovered in the exercise of reasonable diligence. <u>Wysong & Miles Co. v. Employers of Wausau</u>, 4 F.Supp.2d 421, 433 (M.D.N.C. 1998). It is equally beyond argument that such accrual date is not later than date on which the plaintiff received the policy, which for the reasons discussed above was not later than 1994 when he made application under the very provision he now seeks to challenge.  Plaintiff's UDTPA claim will, therefore, be dismissed.

Third, plaintiffs' claim that defendants engaged in unfair insurance practices by violating various subsections of N.C. Gen. Stat. § 58–63–15 is also barred by the same statute of limitations applicable to UDTPA claims,  <u>Jefferson-Pilot Life Ins. Co. v. Spencer</u>, 336 N.C. 49, 53 (1994), for the same reasons discussed above.  Any possible violations of Section 58–63–15 were complete not later than 1994 and such claims will be dismissed as time barred.

Fourth, defendants are also entitled to judgment on plaintiff's claim of breach of contract as plaintiff fails to state plausible facts that could support such a claim.   In order to state a claim for breach of contract, plaintiff must allege a

    (1)     legal obligation of the defendant to the plaintiff;

    (2)     violation or breach of that right or duty; and

    (3)     consequential injury or damage to the plaintiff.

<u>Investment Properties v. Norburn</u>, 281 N.C. 191 (1972).  Under North Carolina law,

> [w]hen the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court[,] and the court cannot look beyond the terms of the contract to determine the intentions of the parties.

<u>Piedmont Bank & Trust Co. v. Stevenson</u>, 79 N.C.App. 236, 240 (internal citations omitted), <u>aff'd per curiam</u>, 317 N.C. 330 (1986).  Thus, '[i]t must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face

it purports to mean." <u>Hartford Accident & Indemnity. Co. v. Hood</u>, 226 N.C. 706, 710 (1946) (internal citations omitted). Here, plaintiff alleges not that defendants breached the terms of the contract of insurance, but instead that defendants breached an oral promise between plaintiff and defendants' agents. He contends that "[US Life and AMAI] promised Plaintiff Richard D. Anderson that he would owe no premiums for the rest of his life, as long as he remained disabled, and Plaintiffs accepted this promise and agreed to it." SAC ¶ 57. The problem with alleging the existence of a contract which purports to contain a gratuitous concession is that such finds no correspondent allegation of what, if any, consideration was given by plaintiff in exchange for what amounts to a $32,000 premium waiver for life. In order for a contract to be enforceable, it must be supported by consideration. <u>Burton v. Williams</u>, 202 N.C. App. 81, 85, 689 S.E.2d 174, 178 (2010). What is missing is any plausible allegation of what plaintiff gave up to receive such benefit. Consideration sufficient to support a contract consists of "any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee." <u>Lee v. Paragon Grp. Contractors, Inc.</u>, 78 N.C. App. 334, 338 (1985). Indeed, what constitutes being "disabled" is also an essential term which is undefined by any plausible allegation. Thus, the court is left with what, if plaintiff's allegations are fully credited, amounts to a breach of contract claim based on a gratuitous promise. As a matter of well-settled North Carolina law, a gratuitous promise unsupported by consideration is unenforceable and will not support the assertion of an actionable claim. <u>Chem. Realty Corp. v. Home Fed. Sav. & Loan Ass'n of Hollywood</u>, 84 N.C. App. 27, 33 (1987). The court will dismiss this claim for failure to state a viable cause of action.

Sixth, even if plaintiff's claim of negligence was not time barred, plaintiff has failed to

state a viable claim of negligence under Rule 12(b)(6).  Plaintiff contends in the Second Amended Complaint that AMAI owed a duty to "act as fiduciary" for plaintiff in securing group life insurance coverage with a waiver of premium rider without a maximum age limit, which AMAI breached by: (1) breaching its contract with Provident, and (2) not informing Dr. Anderson within a reasonable period of time that it was unable to obtain a policy of life insurance with the allegedly requested waiver of premium for life rider. SAC ¶¶ 48–49. The essential elements of a cause of action for negligence are duty, breach of duty, proximate cause, and damages.  <u>Camalier v. Jeffries</u>, 340 N.C. 699, 706 (1995).  In order to recover, however, "all damages must flow directly and naturally from the wrong, and . . . they must be certain both in their nature and in respect to the cause from which they proceed." <u>People's Center, Inc. v. Anderson</u>, 32 N.C.App. 746, 748 (1977) (citation omitted). "[N]o recovery is allowed when resort to speculation or conjecture is necessary to determine whether the damage resulted from the unlawful act of which complaint is made or from some other source." <u>Id.</u>, at 748-49 (citation omitted).  Here, plaintiff has failed to plausibly allege that AMAI owed him any duty of care in securing such a policy.  North Carolina law is well settled that any "action in tort, founded upon a breach of contract, cannot be maintained by one who is not a party or privy to the contract." <u>Jones v. Otis Elevator Co.</u>, 231 N.C. 285, 289 (1949).  Here, while plaintiff may have benefited (and indeed did benefit substantially) from the Provident policy secured by AMAI, plaintiff was not a party to that agreement.  While an agent has a duty to procure insurance coverage requested by the insured, the insured also has a duty to read the insurance contract provided by the agent and is charged with knowledge of its contents. <u>Willis v. Allstate Ins. Co.</u>, 172 N.C.App. 175 (2005).  Plaintiff simply cannot plausibly allege that he did not have a reasonable opportunity to

read the contents of the Provident certificate as he clearly knew what benefits the policy provided when he applied for and received a waiver in 1994. Finally, plaintiff has not plausibly alleged facts which would support a finding of damages as the terms of the premium waiver are identical in the Provident policy and the US Life policy he now enjoys.

Seventh, and finally, plaintiff's claim of "Duress and Conversion" are not actionable Duress, in and of itself, is not a proper cause of action. Hinson v. United Fin. Servs., Inc., 123 N.C. App. 469, 472 (1996). Rather, a cause of action for duress is in reality a claim for rescission of a contract based on duress. Id. Duress exists where one, by the unlawful act of another, is induced to make a contract or perform or forego some act under circumstances that deprive him of the exercise of free will. Stegall v. Stegall, 100 N.C. App. 398, 401 (1990). Plaintiff makes absolutely no plausible allegations that anyone or any entity engaged in acts that overcame his free will by coercing him into paying premiums. Clearly, paying premiums was not plaintiff's only option as he could have decided to forego coverage among a number of other options. As the court takes notice, life insurance, while prudent to provide for dependents in the event of one's untimely death, is a luxury, not a necessity. Precisely how a person could be coerced into paying premiums on a half-million dollar policy is beyond the allegations of the Second Amended Complaint. Finding that plaintiff has failed to state a viable cause of action, this claim will also be dismissed.

VII.

For the reason stated, the court finds that plaintiff has not stated causes of action that are timely or viable. The court has closely read plaintiff's Response to the Motion for Judgment on the Pleadings, which essentially concedes as much. Plaintiff's attempts to salvage from the

Second Amended Complaint claims that are not squarely presented within the four corners of the pleading is equally unavailing.2

## ORDER

**IT IS, THEREFORE, ORDERED** that defendants' Motion for Judgment on the Pleadings (#56) is **GRANTED** for the reasons herein stated and more fully developed in defendants' memoranda in support and reply.

Signed: October 6, 2014

Max O. Cogburn Jr.
United States District Judge

---

2       While not part of this court's reasoning, the court understands plaintiff's frustration with now having to pay substantial premiums after a promising career in medicine was cut short by unexpected disability.  It is difficult to rationalize having to pay $32,000 a year for a benefit that was free just a few years ago.  That requirement is, however, clearly set forth in the governing certificates.  In dismissing this claim, the court does not call into question plaintiff's *belief* that he would receive coverage for life based on having a disability.  Based on interactions with Dr. Anderson while he was proceeding pro se, the court finds Dr. Anderson to be a sincere person who is simply attempting to enforce what he believes was a promise made but not kept.  This is strictly a legal call, not a judgment on plaintiff's character, which remains firmly intact.